## Case No. 7,795.
### KING v. GEDNEY.
[1 MacA. Pat. Cas. 443.]

Circuit Court, District of Columbia. April, 1856.

PATENTS—INTERFERENCE APPEALS—JURISDICTION—CONSTRUCTION OF CLAIMS—MASTER'S INVENTION APPLIED BY SERVANT.

[1. A decision by the commissioner, upon an interference between two applicants, awarding to each a patent on his specific claim, but limiting the claim of one party to a part only of that which he describes and shows in the body of his specifications, may be reviewed by the judge on an appeal by such party. Pomeroy v. Connison, Case No. 11,259, distinguished.]

[2. The provision in the act of 1836 [5 Stat. 117], that the applicant "shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery," does not strictly limit the patent to the matter so specified, but the same must be construed in connection with the whole specification, and the drawings, which must be taken together in explanation of whatever is dubious; and the oath of the patentee is not to be confined to the specific claim, but applies to the whole specifications.]

[3. An employer who conceives the result embraced in an invention, or the general idea of a machine upon a particular principle, and in order to carry his conception into effect necessarily employs manual dexterity, or even inventive skill, in the mechanical details and arrangements, is nevertheless the inventor, and entitled to a patent as against the servant who was the mere instrument through which he realized his idea.]

[Cited in Fuller & Johnson Manuf'g Co. v. Bartlett, 68 Wis. 86, 31 N. W. 753.]

[This was an appeal by James T. King from a decision of the commissioner of patents, upon an interference between the applications of said King and of George W. B. Gedney for improvements in washing machines.] The patent issued to James T. King, No. 14,818, May 6th, 1856.

M. G. Harrington, for appellant.
J. J. Greenough, for appellee.

MORSELL, Circuit Judge. The appellant, James T. King, on the 27th July, 1854, made his said application for letters-patent for certain improvements in washing machinery, and on the 21st of September of the same year the application was renewed, with amended specifications and drawings, stating in his application and the specifications accom-

[From 4 Ban. & A. 236.]

panying the same that they were improvements upon a machine previously patented to him on the 1st day of October, 1851 (No. 8446), and reissued on the 13th day of April, 1852 (reissue No. 215). Pending which application George W. B. Gedney, the appellee, made application for letters-patent for improvements in washing machinery, and on the 10th of April, 1855, an interference was declared and notice as usual given, and a day appointed for the hearing, and leave given to take testimony, &c., which testimony, with the arguments of the respective counsel for the parties, was submitted to the commissioner for the trial of said issue.

On the 13th of July, 1855, the commissioner made his decision, in which he states that "the said James T. King, in the specification accompanying his application, claims 'the construction of a rotary cylinder, in connection with the internal and external pipes, arranged in such a manner that through said pipes steam can always be let into the lower part of the cylinder and escape at the top while the cylinder is in motion or stationary, and that by the same arrangement hot water, cold water, or steam can be let into the cylinder at the top and escape at the bottom while said cylinder is in motion or stationary.' Gedney, in his specification, claims 'the combination of a series of revolving pipes with a rotary cylinder, which alternately become induction and eduction pipes, by means of a valve constructed substantially in the manner and for the purpose set forth.' * * * By the evidence on the part of King, particularly that of John Fallon, it appears that the device specified in his claim above quoted was invented by him as early as February or March, 1852, while on the part of Gedney there is no evidence to show any invention by him prior to that date, nor does it appear that Gedney claims the said device as claimed by King.

"But this invention, shown to have been made by King in February or March, 1852, was embodied in a form different from that which forms the subject of the claim of Gedney, as above quoted; and the only question which can admit of doubt upon the testimony is which party is the true or first inventor of that modification of King's invention which is specific in the claim of Gedney.

"By the testimony of Henry Fern and John Fallon, it appears that this last-mentioned improvement was described to them by King in September or October, 1853, and these witnesses appear to have regarded it as his invention; while on the part of Gedney there is no testimony directly showing him to have been possessed of the same improvement at so early a date, except that of Mrs. Gedney, his wife, which is excluded on account of her relationship to him. It is, however, sought to show by the testimony of James M. Osborn and Franklin W. Willard, but particularly the former, that King declared the improvement in question to be Gedney's inven-

tion. Osborn's testimony seems to show this, and Willard's, though not direct, lends a certain degree of confirmation, weakened, however, by the circumstances of his testimony. But it must be allowed that even Osborn's testimony to this point is far from being quite clear, because his description of the improvement to which he understood Mr. King's remark to be applied is rather vague. Nevertheless, it is difficult, after reading Osborn's testimony, and considering it in connection with the construction of the washing-machine at Randall's Island, according to the testimony generally, to believe that any other feature of the machine than the one now in question could have been the subject of King's declaration. But whatever might have been the just effect of Osborn's testimony, in itself considered, it is very important in connection with it to observe that King, although he has described in his specification and drawings the improvement claimed by Gedney, along with the earlier form of the subject of his general claim, has not claimed it, and is therefore before the office without anything to show that he has made oath that he believes himself to be the original and first inventor of that improvement. Taking this fact in connection with Osborn's testimony, the office is led to decide the question of priority of invention in favor of the said Gedney, so far as relates to the claim which he has made.

"In regard to that part of the testimony going to show the labeling of certain models or machines by Gedney as King's invention, it is sufficient to observe that the admission, if fully proved, that such models or machines contained an invention of King's, could not be construed into an admission that they contained no invention of his own, so as to invalidate the claim which he now makes under oath. For these reasons, the decision of the office is in favor of the said Gedney upon the claim which he has made, and in favor of the said King upon the claim which he has made, as quoted above from their respective specifications."

From which decision the said King hath appealed, and duly filed in the patent office his reasons of appeal.

The first reason is for error in the position stated by the acting commissioner that the improvement in controversy is not embraced in the oath of said appellant, as attached to his petition, specification, drawings, &c., as a part of his claim. The second is general—that the evidence shows King to be the first and original inventor of the improvement, and not Gedney. The third, that he erred in giving any credit to the testimony of Willard, and in the proper understanding of the testimony of Osborn. The fourth, because, by his own admission, the improvement was embraced in the specification and represented in the drawings of said King as being long before the invention claimed by Gedney. The fifth, in deciding that the claim of King

does not claim the improvement in question. The sixth is substantially the same as the last above, with the addition that the commissioner ought to have suggested and allowed any necessary amendment of the specification. The seventh is general, because the commissioner refused to grant a patent to him (King) for the improvement described and claimed in Gedney's application.

In reply to the aforegoing reasons, the acting commissioner states: To the first reason, it is hardly necessary to reply to this; the oath in the present form, or in any of the usual forms, is always understood to apply to what is claimed by the applicant, and to nothing else. To make it apply to all that is described in the specification, would be absurd, since in almost all cases the description, besides what is claimed, contains much that is old. Upon the second reason of appeal, he refers to the decision of the acting commissioner, and to the testimony, remarking that priority of knowledge of any invention by any party is only presumptive evidence of original invention by him; and that although such presumption may be good in the absence of any countervailing evidence, yet the proof of originality is not positive, and does not exclude other evidence that may come in to show that the knowledge was derived from another party. Upon the third and fourth reasons of appeal, the commissioner says: "I have nothing to add. The answer to the fifth reason is contained in the following passage of the acting commissioner's decision, viz.: 'But this invention, shown to have been made by King in February or March, 1852, was embodied in a form different from that which forms the subject of the claim of Gedney, as above quoted; and the only question which can admit of doubt upon the testimony is which party is the true or first inventor of that modification of King's invention which is specific in the claim of Gedney.' The court will then observe that if the description and drawings of the modification claimed by Gedney were entirely erased from King's specification, the claim of King would still be opposite to the remaining description and drawings of the form invented by him in 1852. Keeping this fact in view, it is impossible to come to the conclusion that King's claim does unequivocally claim the modification which Gedney's does." Upon the sixth reason, the commissioner says: "I remark that the fact that King did not claim the improvement in question was not itself merely made the ground of the decision. It was only allowed to weigh in connection with the testimony;. and this involves no unfairness or injustice to the party, as by the sixth section of the law of 1836 the applicant is bound to be explicit as to the part or improvement claimed. Further, as to the right of the party to amend his claim, the applicant for a patent has a right to amend his claim, renewing his oath of invention, when the nature of the amendment makes it proper and necessary; but the office is not bound to make suggestions as to what he should claim, and consequently was not bound to direct Mr. King so to amend his claim that it should conform to the specification. If by this is meant so amending as to make it expressly claim the modification in question, the office is wont to be cautious, particularly in cases of interference, in regard to suggestions or directions to parties about their claims. The propriety of this in cases of interference is manifest; and in the present case it is clear that the office was not bound, prior to the declaration and hearing of the interference, to give any such directions as it is claimed it should have done. Nevertheless, after the decision of this interference, it was, under the practice of the late commissioner of patents, competent for King, had he seen fit, to renew his application, making express claim to the improvement in question, under oath, as usual, and thus have a new interference declared."

Notice of the time and place of trial of said appeal having been duly given to the parties, the commissioner then and there laid before the judge the grounds of his decision in writing, with the original papers and the evidence in the cause; and the parties submitted said case with their written arguments. On the part of the appellee, the jurisdiction of the judge to hear and decide the appeal from the decision of the commissioner in this case is objected to, upon the ground that "the commissioner decided not to refuse a patent to either applicant, but to grant a patent to each party for just what he had claimed in his application." It is argued that it has been settled by the decisions of this tribunal that the judge has no control over the decisions of the commissioner of patents, except where he refuses a patent as prayed for.

If the present is a case like those which have been decided on this point, or falling within the principles settled by those cases, then the question certainly must be considered at rest, and not open for discussion.

The case of Pomeroy v. Connison [Case No. 11,259] was not the case of an applicant for a patent whose application or claim had been rejected or refused by the commissioner, and who was seeking redress by an appeal, but of a patentee. That case decides that "in no other case under the patent laws can an appeal be taken from the decision of the commissioner, unless the application for a patent has been rejected by him."

A review of the provisions in the patent laws on that point was then taken by Judge Cranch, which he follows by the following reason: "An appeal is given to a disappointed applicant, because otherwise the decision of the commissioner would be conclusive against him. It is not given to the patentee, because the decision of the commissioner is not only not conclusive as to him, but does not in any manner affect his legal or equitable rights." Again he remarks: "An adjudi-

cation of it by the commissioner or the judge has no effect upon a patent already granted," &c. Again: "He (the judge) can only act in a case where there are contending applicants for a patent, and those applicants must have prayed for a patent. A patentee is not an applicant. He has already obtained all he asked for."

This decision has been considered as, settling the question on this point in the various cases where it has subsequently occurred before this tribunal. King, the appellant, was an applicant for a patent; he is not, therefore, within the terms of the decision. Is he or his case within the reason? Has he already obtained all he asked for? As before stated, the commissioner says: "The decision of the office is in favor of the said Gedney upon the claim which he has made, and in favor of the said King upon the claim which he has made, as quoted from their respective specifications."

King contends that the invention for which he claims a patent, and as described by him, substantially embraces the claim made on the part of Gedney, and of which the commissioner has decided the said Gedney to be the prior inventor. In order to show the defects in the claim of the appellant and the differences between his description and that of the appellee, the commissioner in the first part of his opinion has recited each of them; by a critical comparison of which, although there is a difference in the phraseology, I can perceive no substantial difference in the description of what I understand to be the principle of the invention intended by both to be described, which is, that the pipes shall be so arranged with a rotary cylinder alternately to become induction and eduction pipes; the particular means—by a valve—are specifically stated in the one and not in the other. But as to this latter, the means being embraced in the general description, I suppose them to be of that ordinary character that the use of them, or something analogous, would necessarily be suggested to a mechanic skilled in constructing like machines, without invention on the part of the mechanic. That it is a difference merely of form, I think may be inferred from what the commissioner himself says in another part of the opinion: "That although King has described in his specification and drawings the improvement claimed by Gedney, along with the earlier form of the subject of his general claim, he has not claimed it, and therefore is before the office without anything to show that he believes himself to be the original and first inventor of that improvement." I suppose he here means that King, in the part of the specification quoted by him just alluded to, has not specially and specifically again described it.

It is true the statute of 1836, which requires the applicant to deliver a written specification of his invention, says: "And shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery." The strictness which the commissioner seems to think must be practiced in regard to this provision may have arisen from the rule of the English law being looked to as his guide, where the patent first issues and contains no reference to the specification; for which reason a more special and specific description must be made in the heading or claiming part. Our practice is entirely different. The specification is required to be first prepared and filed before the patent issues, and should be referred to therein at full length as particularly stating the whole matter of the claim for a patent, which specification is considered a component part of the patent, and, with the drawings, must be taken in construction together and in explanation of whatever may be dubious. According to that rule one part of the specification and drawings may be resorted to to explain any other; and so as it respects the oath.

To this effect I refer to the case of Hogg v. Emerson, 6 How. [47 U. S.] 437, and to Davis v. Palmer [Case No. 3,645], in the first of which cases the judge, in delivering the opinion of the court, says: "The oath of Emerson, too, that he was inventor of the improvement, must thus be considered as extending to all described in the schedule no less than the title; and this is peculiarly proper when the specification is his own account of the improvement and the patent is usually only the account of it by another —an officer of the government." If this, however, could be considered an objection, for the reason assigned by the commissioner, yet, by an application of the rules just stated, the objection must be considered as fully removed. The plea to the jurisdiction is therefore overruled, and the case will be retained to try and decide it upon the merits.

With a view to the proper application of the testimony to the principles of law which must rule in this case, it will be proper to notice the relation in which the parties stood to each other.

King was carrying on a considerable establishment in the manufacture of washing-machines, with a number of hands in his employ and under his direction, and from time to time from the year 1851 was making and adding improvements thereto. In the month of October, 1853, Gedney, at his own solicitation and request, was taken by said King into the employment—first as a draftsman, and subsequently as a general foreman—subject, of course, to the orders and directions of King, and who it is proved by his witnesses did so order and direct said Gedney. After the issue of King's patent in 1852, the several improvements stated in his specification and drawings were made in his shop, and in the course of that business, for which he is now claiming a patent,

including the one involved in this issue. The change asserted by Gedney is supposed by him to consist of a material modification of the improvement claimed by King as his invention, and which said Gedney has particularly stated in his specification as his invention. This, if true, was discovered by him whilst so occupied by King, and under his directions.

Mr. Osborn, one of the principal witnesses of the appellee, and working in the same shop as one of the laborers, says he assisted in making the patterns for the alterations in the machine on Randall's Island in February or March, 1854. The alterations were a four-way valve at the breach end of the tub. Instead of its discharging at the end of the tub there were pipes leading to the front end connected to this four-way valve. Gedney was the foreman, and directed the making the alterations in the factory. King gave him no directions in relation to those alterations; he asked him for directions during the time that he was making the alterations, and his answer was, "I do not know anything about it; go to Mr. Gedney." He said it was Mr. Gedney's improvement, and he knew nothing about it; if it did not work it was Mr. Gedney's fault; witness must go to him for all instructions. He did not hear King give directions to any of the workmen in the shop. He has seen King and Gedney conversing together at the factory, when chalk marks were made upon the floor by Gedney to convey to Mr. King the manner in which he was going to prosecute the work. * * * Conversations between King and Gedney when chalk marks were made on the floor were of frequent occurrence. In those conversations King asked Gedney if he thought that was a better way than another. Gedney said he thought it was, as it would require less repairs; it would do better work—more of it—there would be less friction; and in a great many other points King asked Gedney what was to be the form; Gedney chalked it on the floor.

If this testimony is admitted to be true, it must be allowed to be vague and equivocal, as it relates to any particular machine on Randall's Island, and as it relates materially to the invention involved in the issue between the parties. So, with respect to Gedney's giving directions to the witness, Mr. King might have given to Gedney, as his foreman, general directions on the subject both of the valve and its arrangement and its connection with the pipes and the particular form in which it was to be made. The suggestion of Gedney, in which he directed the witness, and of which King was unacquainted—this might have been the case without Osborn's knowledge, and most probably was, as the witness was not consulted on the occasion; and this might have been the particular improvement alluded to when King said it was Gedney's improvement. All this would not be sufficient to

have made him the inventor, if the general idea was King's. He could only be considered as acting as King's servant.

Willard says he does not know who invented the improvement; that it was in the machine on Randall's Island, and consisted in the construction of the valve that received the stream. One morning he had conversation with King about the washing-machine; King told him that Mr. Gedney had something that was about right; that if the improvement was his, he would not begrudge $10,000; this was somewhere about the middle of April, 1854, in the shop; the improvement, as he understood it, was as to the admitting steam into the tub in four places, admitting it through a pipe that had a valve with four openings; it went into four pipes or tubes placed on the inside of the tub, April, 1854.

Not much credit can be given to the testimony of this witness. The improvement he alludes to was claimed and used by King as his own, and without objection from Gedney, though with his knowledge, without being obliged to give anything to Gedney for it. And further, the witness (David Oaker) says that Willard told him, a week after he had given his testimony, if King's lawyer had asked him if he would swear to it he would have said "No."

Charles May, one of the workmen in the shop, says that in the latter end of February or March, 1854, he became acquainted with the parties; he was engaged in making the small washing-machine—the copper work on it; Fallon worked with him; he was partly directed by Fallon and partly by Gedney; he has heard Gedney send directions to Fallon about his work. * * * The same remarks may be made about this testimony which have been stated as to the testimony of Osborn.

The rules of law sustaining the positions laid down by me in relation to the relative condition of the parties will be found in the books to be "that if the employer conceives the result embraced in the invention, or the general idea of a machine upon a particular principle, and in order to carry his conception into effect it is necessary to employ manual dexterity, or even inventive skill, in the mechanical details and arrangements requisite for carrying out the original conception, in such cases the employer will be the inventor and the servant will be a mere instrument through which he realizes his idea." Curt. Pat. p. 43. Upon the proof, also, the case on the part of the appellant appears to me to be very strongly made out. The commissioner himself says: "By the testimony of Henry Fern and John Fallon it appears that this last-mentioned improvement [the improvement which Gedney claims] was described to them by King in September or October, 1853, and these witnesses appear to have regarded it as his invention; while on the part of Gedney

there is no testimony directly showing him to have been possessed of the same invention at so early a date," &c. In addition to, and in corroboration of, what the two witnesses just alluded to have said, and without including the witnesses objected to on the ground of interest, there are J. S. King, John H. Conselyer, and George H. Kelly, from all of whom a considerable body of proof on the part of the appellant has been adduced to show that the improvement as described particularly by Gedney, and of which he claims to be the prior inventor, according to the rules before laid down, must be considered as belonging to King, the original inventor, and embraced within this general description of his claim, and within the particular description contained in his specifications and drawings.

This proof, when compared with the testimony of Osborn and the other witnesses on the part of the appellee, will be found directly opposed thereto in all its material parts. The statement of facts of which it consists shows that Gedney worked under the orders and directions, and with the sketches or drawings (furnished him by King from time to time) of the improvements on said machines, and including substantially the one on the machine at Randall's Island. His own conduct affords evidence of such being the case. The laborers in the shop with him never heard him pretend to set up any claim to the invention until a few weeks before he knew he was to leave the employ of King, although a number of the machines, including the one sent to Washington for a patent and having this improvement on them, as claimed by King, were known to him, and were labelled by him for the purpose of being sent away.

From the fullest consideration I have been able to give the case I am satisfied, and such is my opinion, that said Gedney was not the prior inventor of said improvement as described by him; but that said King must be considered as such, and that it is embraced and described by him, as above stated; and that the commissioner's decision as to that must be reversed, and affirmed as to that part of it which is in favor of said King.